**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REBEKAH BAGNATA, | : | CIVIL NO.: 1:25-cv-01716 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| FRANK BISIGNANO, Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

In this social security action, Plaintiff Rebekah Bagnata seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act. We have jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

**II. Background and Procedural History.**

We refer to the transcript provided by the Commissioner. *See docs. 3-1* to *3-9*.[1] On December 9, 2022, Bagnata filed an application for disability insurance benefits. *See Admin. Tr.* at 180–86. She contends that she has been disabled since January 1, 2020. *Id*. at 180. After the Commissioner denied her claim at the initial level and at the reconsideration level of administrative review, Bagnata requested an administrative hearing. *Id.* at 84–95 In July 2024, Bagnata—who was represented by counsel—as well as a vocational expert testified at a hearing before Administrative Law Judge Timothy Wing (the "ALJ"). *Id*. at 29–67. In August 2024, the ALJ denied Bagnata's claim for benefits. *Id*. at 14–27. Bagnata appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id*. at 1–6. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In September 2025, Bagnata, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See Doc. 1*. She requests that the court reverse this case and remand the case to the Commissioner for further proceedings. *Id*. at 1 (Wherefore Clause).

---

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Bagnata's claims.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 8*. The Commissioner filed a certified transcript of the administrative proceedings. *Doc. 3, 9*. The parties filed briefs, *see docs. 5, 9, 12*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial

evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Bagnata is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical

or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[2]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

[2] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Bagnata met the insured-status requirements through December 31, 2020. *Admin. Tr.* at 17, 19.

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, '"the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision.**

On August 9, 2024, the ALJ denied Bagnata's claim for benefits. *Admin. Tr.* at 14–27. He proceeded only to the second step of the five-step sequential-evaluation process.

**A. Step One.**

At step one of the sequential-evaluation process, the ALJ found that Bagnata had not engaged in substantial gainful activity since her alleged onset date of January 1, 2020, through December 31, 2020, her date last insured. *Id.* at 19.

**B. Step Two.**

At step two of the sequential-evaluation process, the ALJ found that Bagnata did not have any severe impairments. *Id*. at 20. He concluded that Bagnata had one medically determinable impairment: "a history of left shoulder disorder

including calcific tendinopathy." *Id*. at 20.[3] Although Bagnata claims that she has several other impairments, by concluding that Bagnata has only one medically determinable impairment, the ALJ implicitly concluded that her other asserted impairments were not medically determinable impairments.

In his step two discussion, the ALJ notes that Bagnata "alleges that she was limited in her ability to work due to degenerative osteoarthritis,[4] mental illness, bipolar disorder, major depression, PTSD and borderline personality disorder." *Id*. at 21. He then finds that Bagnata's "medically determinable impairments could have reasonably been expected to produce some of the alleged symptoms," but Bagnata's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." *Id*.[5]

---

[3] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to regulations as well as citations to the record.

[4] At the hearing before the ALJ, Bagnata testified that she has "osteoarthritis and degenerative disc disease." *Admin. Tr.* at 37. The ALJ does not specifically address Bagnata's contention that she has degenerative disc disease.

[5] The ALJ's opinion is confusing given that here to refers to "medically determinable impairments" (in the plural) even though he set forth earlier that Bagnata has only one medically determinable impairment. *Compare Admin. Tr.* at 20 with *Admin. Tr.* at 21.

The ALJ then summarizes Bagnata's testimony and contentions:

> [Bagnata] testified that she cannot work full time because of osteoarthritis, living daily in pain and her mental illnesses of bipolar disorder, post-traumatic stress disorder, borderline personality, major depression, and anxiety. She said she writes notes because it is hard for her to concentrate. In terms of [Bagnata]'s alleged mental health issues, she testified that in 2020-2021, when working, she would cry and feel overwhelmed. She could not retain information. She said she went into a deep depression, and she could not get out of bed. Her mother came and stayed with her for four months. She was not under the care of a doctor until the following year.
>
> [Bagnata] testified that she did not have any hospitalization since her hospitalization in June and July of 2017. After her discharge she did not receive mental health treatment in South Carolina. She received medications from a general doctor for a few months after her discharge from the hospital. When she moved back to Pennsylvania in 2019, she didn't have insurance or a doctor until she got married and was under her husband's insurance. She started resumption of medication for mental health issues in 2021 with a general practitioner in Geisinger who referred her to a psychiatrist. She had no treatment and took no prescriptions in 2020 to 2021.
>
> [Bagnata] testified that she had surgery on her shoulder in January 2023 and heart surgery in December 2023. She started treating with her current psychiatrist, Dr. Zow, about a year and one-half ago.
>
> Focusing on her daily activities in 2020-2021, she lived with a friend and then got her own apartment. Her mother was always with her, and she relied on her mother. She had a driver's license, and she did drive, but with extreme anxiety. She did not seek treatment because she had no money. She testified that she missed work once a month for mental health issues when she was working in 2020.

> She said she witnessed a murder in her teenage years, and she has had PTSD since then and she is very fearful. She also alleged having paranoia and she thinks people are talking about her.

*Id*.

The ALJ concludes that Bagnata's "statements about the intensity, persistence, and limiting effects of [her] alleged symptoms . . . are inconsistent with a finding of disability in this case, because the statements are not supported, to the degree alleged, by the overall objective medical evidence of record." *Id*. at 21–22. He also stated that "[t]he nature and scope of [Bagnata]'s treatment history is also not supportive of a finding that [Bagnata] has a severe impairment during the relevant period of review." *Id*. at 22 Then, he reviewed the x-ray and MRI results from August 2020 through March 2021:

> A sacroiliac joint x-ray on August 21, 2020, was negative and the sacroiliac joint spaces were well maintained without ankylosis, spondylosis or osteophytosis. X-rays of her left shoulder on August 21, 2020, revealed a tiny calcification adjacent to the humeral head which may represent calcific tendinopathy. The x-ray was otherwise unremarkable. Further, an MRI of the left shoulder in March 2021 showed no significant tendinosis was appreciated within either tendon. There was no high-grade partial or full thickness tear. The muscle bulk and signal were within normal limits.[6] X-rays of

[6] Although not mentioned by the ALJ, there is a notation in a later medical record that a Dr. Feldmann interpreted the March 2021 MRI as showing chronic rotator cuff tendinopathy. *See Admin. Tr.* at 777 ("**MRI** Left Shoulder (3/1/2021) reviewed and independently interpreted by Dr. Feldmann as: chronic rotator cuff tendinopathy.").

> her bilateral knees in February 2021 showed no radiographic findings to account for her symptoms.

*Id*.

The ALJ noted that prior to her alleged onset date of January 1, 2020, Bagnata was hospitalized from April 5, 2015, to April 14, 2015, for suicidal ideation. *Id*. He observed that "[s]he had a medication change three weeks prior and her symptoms worsened." *Id*. "Her discharge diagnoses were bipolar affect disorder, depressed with psychotic feature, [and] posttraumatic stress disorder." *Id*. The ALJ also noted that Bagnata was hospitalized again from June 22, 2017, to July 7, 2017, "for [a] suicide attempt by drug ingestion, acute respiratory failure, depression major and recurrent and bipolar disorder." *Id*.[7]

The ALJ then considered the opinions of the state agency medical and psychological consultants. As to the state agency consultants who initially reviewed Bagnata's claim, that ALJ noted that both the medical consultant and psychological consultant "indicated that there was insufficient evidence to evaluate the claim for the date last insured of December 31, 2020." *Id*. The ALJ found that "[t]o the extent considered an opinion, this statement is not persuasive as it is not consistent with the overall medical evidence of record." *Id*. The ALJ then

---

[7] Although the ALJ reviewed the above-mentioned x-ray and MRI results and he notes Bagnata's hospital records from 2015 and 2017, he does not mention any of the other treatment notes in the record, which includes over 1800 pages of medical records albeit most from before or after the period from January 1, 2020 (alleged onset date) to December 31, 2020 (date last insured).

concluded that "the record does contain sufficient evidence to evaluate the claim, and this evidence further supports the finding that [Bagnata] had no severe physical or mental impairments from her alleged onset date of January 1, 2020 to her date last insured of December 31, 2020." *Id*. The ALJ does not, however, explain to what evidence he is referring.

The ALJ similarly treated the opinions of the state agency consultants who reviewed Bagnata's claim on reconsideration. Noting that the medical consultant found that there was "insufficient evidence to evaluate the claim for the date last insured" and that the psychological consultant "found the available medical evidence insufficient to evaluate the severity of functional limitations results [sic] from mental health impairments at or prior to the date last insured of December 31, 2020," the ALJ found that "[t]o the extent considered an opinion, this statement is not persuasive, as it is not consistent with the overall medical evidence of record." *Id*.[8] The ALJ then concluded that "the record does contain sufficient evidence to

[8] We note the following regarding the state agency consultants. The state agency medical consultants state that there is "insufficient evidence for the assessment of this claim." *Admin. Tr.* at 71, 78. But they did not say that Bagnata does not have a severe medically determinable impairment. And in the Disability Determination Explanations, there are notations to her musculoskeletal system impairment as "severe." *Id*. at 72, 80. It is not clear, however, who made those notations. The state agency psychological consultants state that "[t]he available medical evidence is insufficient to evaluate the severity of functional limitations results [sic] from mental health impairments at/prior to the DLI of 12/31/20." *Id*. at 73, 81. But they do not state that Bagnata does not have a medically determinable mental impairment or that she does not have a severe medically determinable

evaluate the claim, and this evidence further supports the finding that [Bagnata] had no severe physical or mental impairments from her alleged onset date of January 1, 2020 to her date last insured of December 31, 2020." *Id*. at 22–23. But again, the ALJ does not explain to what evidence he is referring.[9]

The ALJ concludes his discussion as follows: "The conclusion that [Bagnata] does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities is consistent with the objective medical evidence and other evidence, as well as her lack of treatment." *Id*. at 23.

**V. Discussion.**

Bagnata contends that the case must be remanded for further proceedings because the ALJ failed (1) to develop the record; (2) to have a qualified psychiatrist or psychologist review the record; and (3) failed to evaluate Bagnata's

---

impairment. And as to the "A" criteria of the Psychiatric Review Technique, after Listing 12.04, 12.08, 12.15, they include the following notation: "A medically determinable impairment is present that does not precisely satisfy the criteria." *Id*. at 72, 80.

[9] Notably, the ALJ does not mention the "Mental Impairment Questionnaire" completed by Dr. Chen Zhou. *See Admin. Tr.* at 1684–94. Dr. Zhou completed this questionnaire on January 11, 2024. *Id*. at 1691. The questionnaire contains the following question: "What is the earliest date the above description of symptoms and limitations applies?" *Id*. And Dr. Zhou responded "2019." *Id*. Given this, Dr. Zhou's opinions, at least on their face, are tied to the relevant period here. But the ALJ failed to even mention Dr. Zhou's opinions.

mental impairments at any step of the sequential evaluation. Because Bagnata claims that the ALJ failed to develop the record and because the ALJ ended his analysis at step two the five-step sequential-evaluation process, we begin by setting forth general standards regarding the step two analysis and the ALJ's duty to develop the record.

**A. Step Two Analysis.**

At step two of the sequential-evaluation process, the ALJ "determines whether the claimant has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Conversely, an impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b), 416.922(b). "A 'severe' impairment is distinguished from 'a slight abnormality,' which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education, or work experience." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007) (citing *Bowen,* 482 U.S. at 149–51).

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003). "The burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). In fact, "an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id*. (quoting SSR 85–28, *Titles II and XVI: Medical Impairments that are not Severe*, 1985 WL 56856, at *3 (Jan. 1, 1985)). "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *Id*.

**B. Duty to Develop the Record.**

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). "[T]he special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence." *Dobrowolsky v. Califano*, 606 F.2d 403, 406–07 (3d Cir. 1979) (footnote omitted). The ALJ must play an "active role" in this regard. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). He or she has "a duty to develop a full and fair record[,]" and "must secure relevant information regarding a claimant's entitlement to social security benefits." *Id*. When the claimant is unrepresented, the ALJ must "assume a more active role[.]" *Dobrowolsky*, 606 F.2d at 407. Nevertheless, the duty to develop a full and fair record "applies regardless of whether a claimant is pro se or represented because of the non-adversarial nature of Social Security disability benefit proceedings." *West v. Kijakazi*, No. 3:21-CV-01350, 2023 WL 2742746, at *4 (M.D. Pa. Mar. 31, 2023) (citing *Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003)).

The ALJ's duty to develop the record "does not relieve the claimant of her burden of proof[.]" *Guzman v. Berryhill*, No. 3:17-CV-1222, 2018 WL 746385, at *8 (M.D. Pa. Feb. 7, 2018) (citing *Hess v. Sec'y of Health, Ed. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974)). But "[i]f the record is inadequate for proper

evaluation of the evidence, the ALJ's duty to develop the record is triggered." *Id*. "Ultimately, the question is whether the administrative record has been adequately developed under the circumstances to provide a substantial basis for the decision." *Id*. (internal quotation marks and citations omitted).

**C. We will remand this case to the Commission because the ALJ ended his analysis at step two without developing the record and without sufficiently explaining his decision.**

The ALJ determined that Bagnata was not disabled at step two without first developing the record and without adequately explaining his decision. Although all the state agency consultants concluded that there was insufficient evidence to decide the claim, the ALJ nevertheless concluded that there was sufficient evidence to decide the claim and to decide the claim at step two, which is a *de minimis* screening device. And he failed to explain what the specific evidence was that he thought was sufficient. Thus, the ALJ erred in rejecting the state agency consultant's conclusion that there was insufficient evidence to decide the claim.

The regulations set forth actions that the ALJ may take when the evidence in the record is inconsistent or insufficient. 20 C.F.R. § 404.1520b(2) (stating that "[w]e may recontact your medical source"; "[w]e may request additional existing evidence"; "[w]e may ask you to undergo a consultative examination at our expense"; and "[w]e may ask you or others for more information"). In addition, as

Bagnata points out, in certain circumstances, an ALJ "may call on the services of an ME [Medical Expert] by soliciting testimony or requesting responses to written interrogatories[.]" *Soc. Sec. Ruling 18-01p; Titles II & XVI: Determining the Established Onset Date (EOD) in Disability Claims*, SSR 18-01P, 2018 WL 4945639 at *6 (SSA Oct. 2, 2018). The Commissioner stresses that these options are discretionary. That is true. But where there is a need to develop the record, the ALJ must do so by whatever method he or she decides to use. And here if the ALJ was unable to conclude that Bagnata had a severe medically determinable impairment, we conclude he was required to further develop the record.

The Commissioner also stresses that Bagnata was represented by counsel and counsel did not request that the ALJ further develop the record. But here, we do not think any reasonable counsel would have thought that the ALJ would conclude on the current record that Bagnata did not a have a severe medically determinable impairment. Further, as noted above, the ALJ's duty to develop the record "applies regardless of whether a claimant is pro se or represented because of the non-adversarial nature of Social Security disability benefit proceedings." *West*, 2023 WL 2742746, at *4.

Further, as to Bagnata's alleged mental impairments, the ALJ implicitly concluded that they were not medically determinable impairments even though Bagnata had a history of inpatient hospitalizations before her alleged onset date

and she had mental health treatment after her date last insured. The ALJ does note Bagnata's lack of treatment during the relevant period, but he fails to explain how that would lead him to conclude that she does not have a medically determinable impairment given that, as also noted by the ALJ, Bagnata testified that she did not have insurance and she did not seek treatment because she had no money. Under these circumstances, Bagnata's lack of mental health treatment during the relevant time is not sufficient to support the ALJ's conclusion that she did not have a medically determinable mental impairment. This is especially so given that the ALJ does not even mention the opinions of Dr. Zhou.

In sum, we conclude that the ALJ failed to develop the record and his step two analysis is not supported by substantial evidence.

## VI. Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge